UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IVY ROOM LLC, dba TIMELESS
GALLERIA and ERIKA REED, an
individual,

        Case No. 21-10910

        Plaintiffs,

        Paul D. Borman
        United States District Judge

v.

CITY OF HAZEL PARK, MAYOR
MICHAEL WEBB, in his individual and
official capacity, COMMUNITY
DEVELOPMENT DIRECTOR JEFFREY
CAMPBELL, in his individual and official
capacity, CITY MANAGER EDWARD
KLOBUCHER, in his individual and
official capacity, and CITY ATTORNEY and
PROSECUTOR MELISSA SCHWARTZ, in
her individual and official capacity,

        Defendants,

_____/

**OPINION AND ORDER DENYING PLAINTIFFS' EMERGENCY
MOTION FOR PRELIMINARY INJUNCTION OR ALTERNATIVELY
FOR TEMPORARY RESTRAINING ORDER (ECF NO. 8)**

On April 2, 2021, Plaintiffs Ivy Room LLC, dba Timeless Galleria and Erika

Reed filed their Complaint in Oakland County Circuit Court against Defendants City

of Hazel Park, Mayor Michael Webb, Jeffrey Campbell, Edward Klobucher, and

Melissa Schwartz. (ECF No. 1-1, Complaint.) Plaintiffs allege that Defendants'

revocation of Plaintiffs' business license pursuant to the City of Hazel Park's Code of Ordinances violates their constitutional due process and equal protection rights. Plaintiffs also assert several state law tort claims. Plaintiffs filed a Motion for Temporary Restraining Order and/or Preliminary Injunction in the state court on April 14, 2020, which was scheduled for hearing in the Oakland County Circuit Court on April 28, 2021. (ECF No. 1-2, Motion and Notice of Hearing.) However, before that hearing was held, Defendants timely removed this action to this Court on April 22, 2021. (ECF No. 1.)

Now before the Court is Plaintiffs' May 14, 2021 Emergency Motion for Preliminary Injunction or Alternatively for Temporary Restraining Order. (ECF No. 8, Pls.' Mot.)[1] Defendants have filed a response to Plaintiff's motion. (ECF No. 17, Defs.' Resp.)

The Court held a hearing using Zoom videoconference technology on Thursday, May 27, 2021, at which counsel for Plaintiffs and Defendants appeared.

---

[1] Upon receipt of Plaintiffs' motion, the Court initially held a telephonic status conference with the parties on May 17, 2021 to discuss the motion, and the parties agreed to first try to facilitate this matter with the magistrate judge. Magistrate Judge Kimberly G. Altman held a settlement conference with the parties on May 20, 2021, which was unsuccessful. The Court then ordered Defendants to respond to Plaintiffs' motion, and scheduled the motion for a hearing. (ECF No. 13.)

For the reasons that follow, the Court DENIES Plaintiffs' Emergency Motion for Preliminary Injunction or Alternatively for Temporary Restraining Order.

## I. FACTUAL BACKGROUND

On November 26, 2019, Plaintiff, Ericka Reed, submitted her first application for a business license for the Ivy Room, LLC "Ivy Room", dba Timeless Galleria, located at 21502 John R Road, Hazel Park, MI 48030. (ECF No. 17-2, 11/26/19 Business License Application and Denial, PageID.299-300.) This application was denied by the City of Hazel Park ("City") for failure to get final approval from the Hazel Park Police Department. (*Id.*) Plaintiff submitted a second business license application for the same location on April 22, 2020. (ECF No. 17-3, 4/22/2020 Business License Application, PageID.302.). That application listed the applicant's "business activities" as "Baby showers – B-day parties – Graduation parties." (*Id.*) On June 9, 2020, the Hazel Park City Council approved the business license for the Ivy Room. (ECF No. 17-5, 6/9/2020 City Council Minutes, PageID.307.)

The City subsequently received a number of complaints from residents regarding noise and other issues occurring during events held at the Ivy Room. On August 30, 2020, a formal complaint was filed with the Hazel Park Police Department ("Police Department") regarding an event held at the Ivy Room. (ECF No. 17-8, 8/30/2020 Police Report, PageID.324-27.) That complaint involved a

"loud/annoying party" with approximately 200 people observed in the venue, in the parking lot, and in nearby parking lots. (*Id.*) According to the report, upon arriving on the scene at approximately 1:30 a.m., officers observed loud music being played from the venue and from parked vehicles, attendees carrying open liquor bottles in the venue and in the parking lots, and very few attendees wearing PPE. (*Id.*) Responding officers also observed no bartender or representative of the venue on the premises to take responsibility for the actions of the patrons. (*Id.*) Officers noted that they were able to hear the loud music being played from a block away. (*Id.*)

On September 20, 2020, the Police Department received another complaint regarding "a large gathering" of people "being excessively noisy and parked all over" at the Ivy Room. (ECF No. 17-9, 9/20/2020 Police Report, PageID.329-30.)

The City issued its first Notice of Revocation for Business License for the Ivy Room on September 24, 2020. (ECF No. 17-10, 9/24/2020 Notice of Revocation, PageID.332-34.) The Notice discussed in detail the August 30, 2020 police report, noted that the Ivy Room does not have a liquor license and thus "open intoxicants are not permitted at this location," and also noted that when the police arrived, "there was no supervisor or person-in-charge who appeared to take responsibility for the actions of the patrons of the business," and that "[b]y having no supervisor or person-in-charge present," this "jeopardized public health, safety and welfare by: 1) failing

4

to ensure the safety of the patrons; 2) [and] failing to supervise and ensure the actions of its patrons complied with laws, ordinances, and licensing; 3) did not adversely affect the public health, safety and welfare of the surrounding areas; and 4) did not interfere with the neighborhood's quiet use and enjoyment of their property." (*Id.*) The Notice stated that "[t]he loud and crowded gathering violated provisions of the zoning ordinance, including, the parking ordinance (Chapter 17.28), the conditions of the business license, and required conditions contained in the local business district zoning ordinance that all business shall be conducted wholly within an enclosed building (Chapter 17.44, Section 17.44.050)." (*Id.*) The Notice advised, in accordance with the City Ordinance, that the revocation would be effective ten days after written notice is delivered. (*Id.*) See City Ordinance 5.03.130(B)(4). The Notice further advised that Plaintiffs "may appeal a decision to the Hazel Park City Council within ten days from receipt of this letter, and must, among other requirements as set forth in Section 5.03.150, be initiated by written request." (*Id.*) Thus, there was a notice to the Plaintiffs on the right to appeal.

The Notice of Revocation was issued pursuant to Hazel Park Code of Ordinances, Section 5.03.130(B). That Ordinance provides, in pertinent part:

B.    Revocation of License.

1.    Any License for Cause Upon Investigation. Any license issued under this chapter may be revoked by the mayor

5

upon the investigation and written recommendation of the chief of police, fire chief, community development director or enforcement officer for a violation of this chapter by the licensee; or if the licensee no longer qualifies for a licensee or if the licensee's license has been suspended three times in a ten-year period; or if the licensee has misrepresented or withheld information on the original application or any renewal application.

2.    Written Notice Served Upon Licensee. Written notice of such revocation shall be served upon the licensee by delivery to the licensee, by delivery of the establishment, by depositing the same in the United States mail, postage prepaid, certified or registered mail, return receipt requested, addressed to the licensee at the address shown on the license. Such notice shall be deemed served upon the licensee upon deposit thereof in the United States mail.

3.    Contents of Notice. The notice of revocation shall inform the licensee of the reasons for such revocation, and the right of appeal under the provisions of this chapter.

4.    Effective Date. Such revocation shall be effective ten days after written notice is delivered to the licensee.

5.    <u>Right of Appeal</u> to the city council. Any revocation by the mayor may be appealed to the city council.

City Ordinance 5.03.130(B) (emphasis added).

Hazel Park City Ordinance 5.03.150, Denial, suspension or revocation

– Appeal, provides in relevant part:

A.    Licensee May Appeal to City Council. Within ten days of service of the written notification of denial, suspension or

revocation of a license, the applicant or licensee, as the case may be, may appeal such action to the city council.

* * *

C.     Action Initiated by Written Objection. The appeal to the city council shall be initiated by filing a written objection to the action denying, suspending or revoking a license with the clerk. The written objection shall state what action is being appealed from and shall have attached thereto a copy of the written notice of the action complained of and shall specifically state the reasons for believing the action was erroneous.

D.     Hearing Scheduled by Clerk. Upon receipt of an appeal, the clerk shall schedule such appeal for a hearing before the city council at its next regularly scheduled meeting and inform the person who initiated the appeal of the time and place of such meeting and of the opportunity to appeal and be heard by the city council at such meeting.

E.     Stay Pending Final Decision. An appeal of any suspension or revocation shall automatically stay such suspension or revocation pending the final decision of the city council.

***

G.     Further Appeal to Circuit Court. Any person aggrieved by the final decision of the city council may pursue an appeal of such decision to the Oakland County circuit court. The time and procedure for filing such appeal shall be in accordance with the state of Michigan Administrative Procedures Act of 1969, as amended, being M.C.L. 24.302 et seq and the Michigan Court Rules.

City Ordinance 5.03.150.

On October 8, 2020, Plaintiffs filed a request for appeal, per the Ordinance.

(ECF No. 17-12, 10/8/2020 Request for Appeal, PageID.338-39.)  Plaintiffs' filing

of the appeal "automatically stay[ed]" the revocation of the business license "pending the final decision of the city council." City Ordinance 5.03.150(E). Plaintiffs' appeal was heard at the October 13, 2020 Hazel Park City Council meeting. (ECF No. 17-13, 10/13/2020 City Council Minutes, PageID.341-45.) Plaintiffs' attorney attended on behalf of Plaintiffs, and spoke at the hearing. (*Id.*) In addition, a resident who lives near the venue spoke "regarding past conduct of the patrons of the business," and the Fire Marshall also spoke regarding his observations of the property. (*Id.*) At the conclusion of the appeal hearing, the City Council approved a motion to reinstate the Ivy Room's license subject to certain conditions. (*Id.*) Specifically, the Ivy Room would receive its business license as long as it operated in in accordance with the following conditions:

1. An in-building dumpster enclosure must be constructed with a door to the alley with all licensed permits and inspections conducted.

2. The building must find and develop a shared parking arrangement for 25 additional spaces.

3. A representative and/or manager must always be on-site when the facility is occupied.

4. The business shall cease operations at 9:00 p.m.

5. No outdoor activities whatsoever without prior approval from City Manager's Office.

6. Occupancy must be set at no more than 76 persons per instructions from the Fire Department and the Fire Marshall.

7. A special inspection of the property is to be performed.

(*Id.*)

On October 9, 2020, just prior to the appeal hearing, another noise complaint was filed with the Police Department at approximately 10:06 p.m. (ECF No. 17-11, 10/9/2020 Police Report, PageID.336.) The responding officer noted the event hall was "blaring music," that he "[s]poke to security outside," and "they stated they would turn the music down." (*Id.*)

And again, on October 31, 2020, another individual made a formal complaint to the Police Department regarding reckless driving and loud noise by patrons in the Ivy Room's parking lot. (ECF No. 17-16, 10/31/2020 Police Report, PageID.350.) The responding officer noted that it was "all quiet upon arrival" and that a "group of Mopar cars [were] advised." (*Id.*)

On January 23, 2021, the Police Department received another formal complaint for a loud/annoying party at the Ivy Room. (ECF No. 17-17, 1/21/21 Police Report, PageID.352.). The officer noted upon arrival that he heard "loud bass from the building" and that he "made contact with employees/security on scene who were advised on the noise." (*Id.*) According to a video of the February 23, 2021 City Council meeting, the complaining resident was so angered and concerned by the

noise and events occurring at the Ivy Room, that she made a recording on her cell phone at approximately 12:21 a.m. to document the events and to provide evidence to City representatives. **(**ECF No. 17-22, 2/23/21 City Council Meeting Video at 19:57 to 21:00). The video provided by the resident shows multiple cars loudly and continuously honking their horns and many individuals yelling and screaming at 12:21 a.m. while at the Ivy Room. (*Id.* at 20:50 to 22:18). According to the resident, the noise coming from the Ivy Room on that date was recorded from inside of her home with the windows completely closed. (*Id.* at 24:20 to 25:38). Finally, the resident also stated that she has a special needs child with Asperger's Syndrome who has to be medicated due to the sensory overload that she experiences when the Ivy Room has an event. (*Id.* at 24:20 to 25:38). The January 23, 2021 police report states that the responding officer "made contact with employees/security on scene who were advised on the noise," and thus establishes that the noise was connected to an event at the Ivy Room. (ECF No. 17-17, 1/23/21 Police Report, PageID.352.) The videos were played at the council meetings, which defense counsel attended, and were provided to the Court to view, which it did review.

Based on the Ivy Room's "continued violations of state laws and regulations and local ordinances," the City issued a second Notice of Revocation for Business License for the Ivy Room on January 26, 2021. (ECF No. 17-19, 1/26/21 Notice of

Revocation, PageID.355-56.) The Notice advised that "due to continued violations of state laws and regulations and local ordinances, effective ten (10) days from the date of this letter the business license for your client ... is revoked." (*Id.*) As before, the Notice advised Plaintiffs of their right to appeal. (*Id.*) Following Plaintiffs' receipt of the Notice of Revocation, City Attorney Melissa Schwartz and Plaintiffs' counsel Fallon Moore had a phone conversation discussing Plaintiffs' "violations of state law and regulations, and local ordinances" as referenced in the Notice of Revocation. (ECF No. 17-20, 1/26/21 Email, PageID.358.)

Again, per Plaintiff's February 5, 2021 written request, Plaintiff was provided an appeal hearing before the City Council on February 23, 2021, as provided in the City Ordinance, 5.03.150. (ECF No. 17-21, Plaintiff's 2/5/21 Appeal Request, PageID.360; ECF No. 17-22, 2/23/21 City Council Minutes, PageID.362-65.) The revocation was stayed pending the appeal. At the appeal hearing, Plaintiff's counsel, Fallon Moore once again attended on behalf of the Ivy Room and Ericka Reed. (ECF No. 17-22, 2/23/21 City Council Minutes, PageID.362-65.) At the February 23, 2021 appeal hearing, the City Council decided that the Ivy Room's business license would remain revoked. (*Id.*). Plaintiffs then filed the present action following the City's revocation of the business license. (ECF No. 1-1, Complaint.)

## II.    LEGAL STANDARD

Temporary restraining orders and preliminary injunctions are extraordinary remedies designed to protect the status quo pending final resolution of a lawsuit. *See University of Texas v. Camenisch*, 451 U.S. 390 (1981). Whether to grant such relief is a matter within the discretion of the district court. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). A plaintiff bears the burden of demonstrating entitlement to preliminary injunctive relief. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Such relief will only be granted where "the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

When considering a motion for injunctive relief, the Court must balance the following factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent preliminary injunctive relief; (3) whether granting the preliminary injunctive relief would cause substantial harm to others; and (4) whether the public interest would be served by

granting the preliminary injunctive relief. *Certified Restoration Dry Cleaning Network*, 511 F.3d at 542. These same factors are considered in evaluating whether to issue a temporary restraining order. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

"[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion...." *Leary*, 228 F.3d at 739. A plaintiff must do more than just "create a jury issue," and must persuade the court that it has a likelihood of succeeding on the merits of its claims. *Id*. A plaintiff must demonstrate that it is *likely* to suffer irreparable harm in the absence of an injunction. *See Winter*, 555 U.S. at 22 ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction.") (emphasis in original) (internal citations omitted). "The 'key word' in determining the extent of an injury sufficient to support the award of injunctive relief is 'irreparable.' Mere injuries, however substantial, are not enough. Rather, 'the harm alleged must be both certain and immediate, rather than speculative or theoretical.'" *Hudson v. Caruso*, 748 F. Supp. 2d 721, 730 (W.D. Mich. 2010) (quoting *Michigan*

*Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)). "This is because the preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in [the] limited circumstances which clearly demand it." *Leary*, 228 F.3d at 739 (internal quotation marks and citation omitted, alteration in original).

## III.   ANALYSIS

Plaintiffs argue that, "[l]ooking at the four factors, each factor weighs in favor of (or at least does not weigh in opposition to) the injunction to prevent Plaintiff from suffering harm in the form of denial of minimum due process under Section 5.03.130(B)." (Pls.' Mot. at p. 12, PageID.217.) Defendants contend in response that the four factors weigh against Plaintiffs' request for a preliminary injunction or temporary restraining order. (Defs.' Resp. at pp. 8-15, PageID.288-95.)

### A.   Likelihood of Success on the Merits

"In order to establish a likelihood of success on the merits of a claim, a plaintiff must show more than a mere possibility of success. However, it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997) (citations omitted).

Although Plaintiffs' Complaint contains eleven counts, Plaintiffs only address their procedural due process claims in their instant motion. (Pls.' Mot. at pp. 12-14, PageID.217-19.)[2] A procedural due process claim requires a two-part analysis: (1) whether the alleged deprivation involves a protected property interest, and (2) whether "the procedures attendant upon that deprivation were constitutionally sufficient." *Mator v. City of Ecorse,* 301 F. App'x 476, 479 (6th Cir. 2008) (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989)). Constitutionally sufficient procedure "generally involves both prior notice and an opportunity for a pre-deprivation hearing." *Id.* (citing *Braun v. Ann Arbor Charter Twp.,* 519 F.3d 564, 572 (6th Cir. 2008); *Harris v. City of Akron,* 20 F.3d 1396, 1401 (6th Cir. 1994)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful place.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "But where a pre-deprivation hearing is impracticable or quick action is necessary, a post-deprivation hearing may be adequate." *Mator*, 301 F. App'x at 479 (citing *Harris,* 20 F.3d at 1401).

---

[2] Plaintiffs have not offered any argument that they are entitled to a preliminary injunction based on the other claims in their complaint, and their failure to do so constitutes a waiver or abandonment of such an argument at this proceeding. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.").

Plaintiffs claim that Defendants "fail[ed] to provide adequate notice of the reasons for the revocation [of the business license], an opportunity to present evidence, or a hearing of any kind." (Pls.' Resp. at p. 12, PageID.217.) Plaintiffs contend that "Hazel Park Code of Ordinances Section 5.03.130(B) is facially invalid as it does not require a hearing of any kind, at any time, pre or post deprivation, and regardless as to whether an emergency or exigent circumstance exists or not." (Id.)[3]

Defendants respond that Plaintiffs fail to assert a cognizable constitutional due process claim because "Plaintiff's own admissions and the City records provide that not only was Plaintiff given proper notice of the reasons for revocation in a variety of formats, but Plaintiff also was given two full and fair appeal hearings where Plaintiff was represented by counsel, had the opportunity to defend herself against

---

[3] Plaintiffs rely, in part, on *Johnson v. Morales*, 946 F.3d 911 (6th Cir. 2020), for their contention that they were not provided adequate constitutional due process. However, *Johnson* is readily distinguishable from the facts of this case. In *Johnson*, the plaintiff's business license was *immediately* suspended following an incident in which individuals, who were not guests of the plaintiff's restaurant, started shooting at the restaurant. *Id.* at 916. The notice of immediate suspension also informed plaintiff that she would have to "show cause" at a hearing as to why her license should not remain suspended. *Id.* at 917. The Sixth Circuit noted that "'[t]he failure to provide a hearing prior to license or permit revocation does not per se violate due process,'" *id.* at 921, but found, in part, under the facts of that case, that plaintiff "stated a viable procedural due process claim based on the government's failure to provide her some type of hearing before suspending her license." *Id.* at 925. In this case, Plaintiffs' license was not immediately revoked, she was provided a hearing prior to revocation, and the notice of revocation in fact remained stayed pending the final decision of the City Council after Plaintiffs' appeal.

all allegations, and had the opportunity to provide evidence against the known allegations." (Defs.' Resp. at p. 9, PageID.289.)

The Court concludes that Plaintiffs fail to demonstrate a likelihood of success on the merits of their procedural due process claim. First, contrary to Plaintiffs' assertion that the City Ordinance is "highly flawed" and allowed "unconstitutional conduct," the Court finds that the Code provides constitutionally adequate process. *See Mathews*, 424 U.S. at 333 ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"). City Code Section 5.03.130(B) provides a license "may be revoked by the mayor upon investigation and written recommendation of the chief of police, fire chief, community development director or enforcement officer," that "[w]ritten notice of such revocation shall be served upon the licensee[,]" and that "[a]ny revocation by the mayor may be appealed to the city council." § 5.03.130(B)(1), (2), (5). City Code Section 5.03.150 provides that "[w]ithin ten days of service of the written notification of denial, suspension or revocation of a license, the applicant or licensee ... may appeal such action to the city council," that "appeal to the City council shall be initiated by filing a written objection to the action ... [which] shall specifically state the reasons for believing the action was erroneous," that "[u]pon receipt of an appeal, the clerk shall schedule such appeal for a hearing before the city council at

17

its next regularly scheduled meeting and inform the person who initiated the appeal of the time and place of such meeting and of the opportunity to appeal and be heard by the city council at such meeting," and "[a]n appeal ... shall automatically stay such suspension or revocation pending the final decision of the city council." City Code § 5.03.150(A), (C) - (E). Finally, "[a]ny person aggrieved by the final decision of the city council may pursue an appeal of such decision to the Oakland County circuit court." *Id.* § 5.03.150(G). The Code therefore provides for both notice and pre-deprivation and post-deprivation hearings and thus provides constitutionally sufficient procedural due process. *See Braun*, 519 F.3d at 572.

Second, pursuant to the City Code, Plaintiffs were given proper notice of the revocation of their business license in September 2020 and January 2021, and in both instances requested and received an appeal hearing, in accordance with the City Ordinance. Specifically, Plaintiffs admit that they received the September 24, 2020 Notice of Revocation, that they requested an appeal to the City Council, which was granted, and that they appeared at the hearing, through counsel, on October 13, 2020, and received a favorable decision. (ECF Nos. 17-10, 17-12, 17-13.) Plaintiffs further admit that they received the January 26, 2021 Notice of Revocation, that they requested an appeal to the City Council, and that they appeared at the hearing, through counsel, on February 23, 2021. (ECF Nos. 17-19, 17-21, 17-22.) It was only

after proper notice and a full and fair opportunity to be heard that the City Council revoked Ivy Room's business license. (ECF No. 17-22). An evidentiary hearing is not required prior to revocation of the business license, and the present administrative procedures fully comport with due process. *See Mathews*, 424 U.S. at 349. Plaintiffs then appealed that decision by filing suit in the Oakland County Circuit Court. (ECF No. 1-1, Complaint.)

Thus, Plaintiffs received proper notice, a hearing, and an opportunity to be heard, and thus they are unlikely to succeed on the merits of their procedural due process claim. This factor weighs against granting Plaintiffs' motion for a preliminary injunction.

### B.    Irreparable Harm

Plaintiffs bear the burden of showing that in the absence of an injunction they will "suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006); *see also Winter*, 555 U.S. at 22 (a mere "possibility" of irreparable injury is insufficient for a preliminary injunction). An irreparable harm is one that is "not fully compensable by monetary damages." *Overstreet*, 305 F.3d at 578. An inadequate showing of irreparable harm will preclude the injunctive relief sought. *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) (observing that "the demonstration of

some irreparable injury is a *sine qua non* for issuance of an injunction") (citing *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).

Plaintiffs assert that they "will suffer irreparable harm if her business license remains revoked and her only source of livelihood is unjustifiably taken," presumably because Plaintiff faces eviction from the property located at 21502 John R Rd. (Pls.' Mot. at p. 13, PageID.218.)[4]

Defendants respond that Plaintiffs' own supporting documents establish that Plaintiffs were already behind in the monthly rental payments and facing eviction before the City took the enforcement action on January 26, 2021. (Defs.' Resp. at pp. 12-13, PageID.292-93.) Specifically, Plaintiffs' Complaint attaches a Demand for Possession/Nonpayment of Rent Notice from their landlord dated March 4, 2021. (ECF No. 1-1, PageID.126.) That Notice states that Plaintiff is behind in her monthly rent in the amount of $7,999.00 (*id.*), which is over two months of rental payments, as Plaintiffs' lease agreement shows the monthly rental payment to be $3,333.00 per month. (ECF No. 1-1, PageID.128.) Therefore, Plaintiffs were in arrears at least as

---

[4] Plaintiffs also argue that "[a] showing of a likely violation of constitutional rights constitutes irreparable harm justifying a preliminary injunction." (Pls.' Mot. at p. 13, PageID.218). However, as explained above, Plaintiffs have failed to show a likely violation of their constitutional rights.

of January 4, 2021, before the City took enforcement action on January 26, 2021, and ultimately revoked Plaintiffs' business license on February 23, 2021. Thus, Defendants argue, "if Plaintiff is evicted from her property, it will be due to her own conduct and cannot serve as the basis for this Court to grant an extraordinary remedy such as a Preliminary Injunction or TRO." (Defs.' Resp. at p. 14, PageID.294.)

While Plaintiffs allege that their constitutional due process rights are jeopardized by the City's practices, that argument is without merit because, as discussed above, they fall woefully short in proving a constitutional procedural due process violation. *See Overstreet*, 305 F.3d at 578. Plaintiff received two public appeal proceedings, which her counsel attended, at which the City provided compelling evidence establishing Plaintiffs' violations.

Further, Plaintiffs have failed to show why, if after resolution of the case, money damages would not fully compensate them. "The harm alleged cannot be 'speculative or theoretical.' Rather, '[i]n order to substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again.'" *Lieberman v. Husted,* 900 F. Supp. 2d 767, 781 (E.D. Mich. 2012) (quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 154 (6th Cir. 1991)). Plaintiffs provide no

factual support that their damages are difficult to calculate and therefore not fully compensable.

Accordingly, Plaintiffs fail to show that irreparable harm is likely, and this factor also disfavors granting the requested injunctive relief.

**C.      Possibility of Substantial Harm to Others and Serving the Public Interest**

Lastly, to be granted a preliminary injunction or temporary restraining order, Plaintiffs have to show that an injunction should be entered in order to prevent substantial harm to others and to serve the public interest. The Court concludes that Plaintiffs have not made such a showing.

Plaintiffs argue that "[i]ssuing an injunction against the unconstitutional ordinance will cause no substantial harm to others, thereby fulfilling the third factor," and that "it is in the public's interest to have local government regulations that comply with the requirements the constitution imposes." (Pls.' Mot. at pp. 13-14, PageID.218-19.) Defendants respond that granting Plaintiffs' motion "poses a substantial harm to the safety and welfare of the general public as the City will be prevented from making a valid revocation to a business that is causing harm to the health, welfare, and safety of the City and its residents." (Defs.' Resp. at pp. 14-15, PageID.294-95.)

The Court is not persuaded by Plaintiffs' allegations that the public interest is best served by circumventing the ordinances the City has in place, when the ordinances at issue have not been shown to be in violation of the constitutional procedural due process rights of its constituents. Thus, these factors weigh against granting Plaintiffs' motion as well. Indeed, the Court finds that Defendant City has clearly established continuous violation by Plaintiffs of state laws and City Ordinances.

Therefore, the Court finds that all four factors discussed above weigh in favor of denying Plaintiffs' Emergency Motion for Preliminary Injunction or Alternatively for Temporary Restraining Order.

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs' Emergency Motion for Preliminary Injunction or Alternatively for Temporary Restraining Order (ECF No. 8) is **DENIED**.


IT IS SO ORDERED.

s/Paul D. Borman
Dated: May 28, 2021                     Paul D. Borman
United States District Judge